UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

LARRY PAUL MAY )
)
     Plaintiff, )
)
vs. )  Civil Action No. CV-97-S-2201-NE
)
BELLSOUTH TELECOMMUNICATIONS, )
INC., )  **ENTERED**
)
)  **FEB 17 1999**
     Defendant. )

## MEMORANDUM OPINION

Plaintiff, Larry Paul May, commenced this action on August 22, 1997, alleging claims for wrongful termination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and a supplemental claim for invasion of privacy under the law of the State of Alabama.[1]   May seeks declaratory and injunctive relief, compensatory and punitive damages, attorney's fees, and costs.   The action presently is before the court on defendant's motion for summary judgment.

---

[1] Although it does not appear that plaintiff intended to assert causes of action for harassment or for a failure to promote, plaintiff does briefly mention each of these in his complaint. (See complaint ¶ 7, ¶ 11(b).) Defendant denies the allegations of these paragraphs in the answer. Neither party addresses either of these allegations as a cause of action. Moreover, plaintiff abandons any such claims in his brief, offering no allegations, argument, or evidence in support thereof. Consequently, the court construes the complaint as alleging three claims: (1) a claim for termination in violation of the ADEA; (2) a claim for termination in violation of ERISA, and (3) a claim for invasion of privacy under Alabama law.



## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ...". (Emphasis added.) The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(per curiam). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific

2

facts showing there is a genuine issue for trial. *See Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *See Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence <u>could</u> draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the

3

"evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

With the foregoing standards in mind, the following facts either are not disputed, or are stated in a light most favorable to plaintiff.

## II. FACTS

### A. Summary of Plaintiff's Employment History with Defendant

Larry Paul May was hired as a lineman on January 2, 1972 by South Central Bell Telephone Company, the predecessor of defendant, BellSouth Telecommunications, Inc. ("BellSouth"). May worked as a cable splicing technician before moving into a management position as a line foreman. May became a Facility Manager in 1984. BellSouth "had continuing downsizing" from 1991 to early 1997.[2]

---

[2] Although May discusses this downsizing as a "reduction in force" (*see*, *e.g.*, plaintiff's brief at 2), neither party relies on this as a basis for analysis.

4

(Brown deposition, at 21.)    Three of twelve "Facility Manager"
positions were eliminated during this period.

May was qualified to perform his duties as Facility Manager,
and remained in this position until the termination of his
employment on March 25, 1996.   May received several laudatory
evaluations during his tenure as a Facility Manager.   He was 43
years old on the date of his termination.   May's pension would have
vested fully in roughly five more years of employment.

## B.   Responsibilities of a Facility Manager

The position of Facility Manager is a first-level management
position within the Procurement, Property and Services Management
Department.    As a Facility Manager, May was responsible for
maintaining 74 facilities in northwestern Alabama.   He worked out
of an office in Decatur, Alabama.   His direct supervisor was based
in Birmingham, Alabama.

May was "on call" twenty-four hours a day, seven days a week.
During 1995 and early 1996, May and other Facility Managers were
required to record time spent on various tasks during a workday.
BellSouth instituted this requirement so it could properly allocate
amounts charged against contracts with outside vendors.   Also in
1995, BellSouth changed its policy of allowing use of company cars
for travel, to a policy of reimbursing employees for expenses based

upon documented mileage.    May estimated that he traveled
approximately 1,500 to 1,700 miles a month.    May determined he
needed a more reliable vehicle than the one he owned at the time of
this shift in policy.    May therefore purchased a new automobile.

## C.    Investigation of Plaintiff

BellSouth conducted a security investigation of May, which
allegedly was prompted by an anonymous phone call in December of
1995 to Ernest Huddleston, Jr., a manager in BellSouth's Security
Department in Mobile, Alabama.    The caller allegedly told
Huddleston that May was going to "pad" his mileage in order to more
quickly pay off the debt incurred for his new, personal vehicle.
(Plaintiff's brief, at 2.)    The caller also said May was spending
an excessive amount of time at home during company hours.
Huddleston relayed this information to Stephen D. Hayes, a manager
in BellSouth's Security Department in Huntsville, Alabama.

Hayes conducted an investigation that included surveillance of
May on eight days during the period of January 18 to February 21,
1996.    Hayes obtained May's "Mechanized Time Reports" for the dates
on which May was monitored for the entire day.    Hayes also obtained
May's "employee expense vouchers."    Hayes then interviewed May and
discussed May's activities during the days of surveillance.
Following the interview, Hayes prepared a written statement which

6

May was permitted to review and revise. May signed the statement. The investigation culminated in an "Investigative Report" (Hayes deposition, exhibit 3).

May's immediate supervisor at this time was H. C. Callaway. Callaway's immediate supervisor was Keith Brown, Director of Property Services Management for BellSouth's Alabama Operations. All Facility Managers in the state of Alabama fell within Brown's organization. Hayes informed Brown of the investigation, and periodically provided Brown with updates. Brown received a copy of the Investigative Report. He then consulted his supervisor, BellSouth's Human Resources Department, and BellSouth's Human Resources Guide. Brown thereafter terminated May's employment.

### III. DISCUSSION

#### A.    Standard For Evaluation Of ADEA Claims

In ADEA cases, the plaintiff has the ultimate burden of proving that age was a determinative factor in the employer's adverse employment decision. *See, e.g.*, *Verbraeken v. Westinghouse Electric Corporation*, 881 F.2d 1041, 1045 (11th Cir. 1989). Initially, the plaintiff must establish that age was a motivating factor in the employer's decision with direct evidence,[3]

---

[3] "Only the most blatant remarks, whose intent could only be to discriminate on the basis of age constitute direct evidence." Clark v. Coats &

7

circumstantial evidence, or statistical evidence. *See, e.g.,*
*Alphin v. Sears, Roebuck & Company,* 940 F.2d 1497, 1500 (11th Cir.
1991).

Plaintiff presents neither direct evidence nor statistical
evidence of discrimination. The court, therefore, will proceed
with the analysis for circumstantial evidence.

To avoid summary judgment on an age discrimination claim, a
plaintiff relying on circumstantial evidence must comply with the
framework created for the evaluation of a plaintiff's proof of an
employer's intention to discriminate in the context of Title VII
disparate treatment claims. That framework was defined by the
Supreme Court in a series of decisions rendered over a period of 20
years, beginning with *McDonnell Douglas Corporation v. Green,* 411
U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), then elaborated in
*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101
S.Ct. 1089, 67 L.Ed.2d 207 (1981), and finally elucidated in *St.
Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125
L.Ed.2d 407 (1993). The analytical framework developed by that
trilogy has three steps. Although these cases involved
discrimination claims under Title VII, a variant of the analysis

---

Clark, Inc., 990 F.2d 1217, 1226 (11th Cir. 1992).

8

applies to claims under the ADEA.  *See Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 566 (11th Cir. 1992); *Alphin v. Sears, Roebuck & Company*, 940 F.2d 1497, 1500 (11th Cir. 1991). The goal of the three-step process is that of "progressively ... sharpen[ing] the inquiry into the elusive factual question of intentional discrimination." *Hicks*, 509 U.S. at 506, 113 S.Ct. at 2746 (*quoting Burdine*, 450 U.S. at 255 n.8, 101 S.Ct. at 1094 n.8).

## 1.  First Step of Analysis

Under this now familiar framework, the plaintiff bears the initial burden of establishing a prima facie case of the employer's intent to  discriminate on the basis of age.  *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 252-53, 101 S.Ct. at 1093; *Hicks*, 509 U.S. at 506, 113 S.Ct. at 2746-47.

The establishment of a prima facie case "creates a presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *see also McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Walker v. Mortham*, 158 F.3d 1177, 1185 n.10 (11th Cir. 1998) (discussing reasons why presentation of a prima facie case creates "a <u>presumption</u>, and not

9

an <u>inference</u>, of intentional discrimination") (emphasis in
original).

## 2. Second Step of Analysis

The effect of the presumption of discrimination created by the
establishment of a prima facie case is to shift to the employer the
burden of producing, but <u>not</u> <u>proving</u>,[4] some legitimate,
nondiscriminatory reason for the contested employment action. *See*
*McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450
U.S. at 253, 101 S.Ct. at 1093. The Supreme Court described this
shift in the burden of going forward with evidence in the following
manner in *Hicks*:

> Thus, the *McDonnell Douglas* presumption places upon the
> defendant the burden of producing an explanation to rebut
> the prima facie case — *i.e.,* the burden of "producing
> evidence" that the adverse employment actions were taken
> "for a legitimate, nondiscriminatory reason." ...
> "[T]he defendant must clearly set forth, through the
> introduction of admissible evidence," reasons for its
> actions which, if believed by the trier of fact, would
> support a finding that the unlawful discrimination was
> not the cause of the employment action. ... It is
> important to note, however, that although the *McDonnell*

---

[4] *See, e.g.,* Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248,
254, 101 S.Ct. 1089, 1094, 67 L.Ed. 207 (1981) ("The defendant need not persuade
the court that it was actually motivated by the proffered reasons."); *see also,*
Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 84 F.3d 1380, 1386 (11th Cir.
1996) ("This burden on the employer is one of production, not persuasion.");
Busby v. City of Orlando, 931 F.2d 764, 77 n.12 (11th Cir. 1991) ("[T]his 'burden
of proof' is to be understood as a burden of production, not persuasion.")
(*citing* Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 109 S.Ct. 2115, 104
L.Ed.2d 733 (1989)).

10

*Douglas* presumption shifts the burden of production to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff," .... In this regard it operates like all presumptions as described in Rule 301 of the Federal Rules of Evidence:

> "In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast."

*Hicks,* 509 U.S. at 506-07, 113 S.Ct. at 2747 (citations to *Burdine* omitted).

If a defendant figuratively sits on its hands, and offers no "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus," *Burdine,* 450 U.S. at 257, 101 S.Ct. at 1096, then "the court must award judgment to the plaintiff as a matter of law ...." *Hicks,* 509 U.S. at 509, 113 S.Ct. at 2748.

> As then-Justice (now Chief Justice) Rehnquist pointed out long before the *Hicks* decision, we require a defendant, on pain of losing the case, to come forward with explanations for its actions once a plaintiff has made out a prima facie case of discrimination, "because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of

11

> impermissible factors." *Furnco Constr. Corp. v. Waters*,
> 438 U.S. 567, 577, 98 S.Ct. 2943, 2949-50, 57 L.Ed.2d 957
> (1978). ...

*Combs v. Plantation Patterns*, 106 F.3d 1519, 1537 (11th Cir. 1997),
*cert. denied sub nom. Combs v. Meadowcraft Co.*, ___ U.S. ___, 118
S.Ct. 685, 139 L.Ed.2d 632 (1998).

To satisfy that burden of production, "[t]he defendant need
not persuade the court that it was actually motivated by the
proffered reasons. It is sufficient if the defendant's evidence
raises a genuine issue of fact as to whether it discriminated
against the plaintiff." *Burdine*, 450 U.S. at 254-55, 101 S.Ct. at
1094 (citation and footnote omitted).

"If the defendant carries this burden of production, the
presumption raised by the prima facie case is rebutted," *Burdine*,
450 U.S. at 255, 101 S.Ct. at 1094-95, and "drops from the case."
*Id.* at 255 n.10, 101 S.Ct. at 1095 n.10; *accord, Hicks*, 509 U.S. at
507-08, 113 S.Ct. at 2747-48. "A satisfactory explanation by the
defendant    destroys    the    legally    mandatory    inference    of
discrimination arising from the plaintiff's initial evidence."
*Burdine*, 450 U.S. at 256 n.10, 101 S.Ct. at 1095 n.10.

12

## 3. Third Step of Analysis

"The defendant's 'production' (whatever its persuasive effect) having been made," *id.*, 509 U.S. at 511, 113 S.Ct. at 2749, "the factual inquiry proceeds to a new level of specificity." *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1095. "[T]he 'new level of specificity' ... refer[s] to the fact that the inquiry now turns from the few generalized factors that establish a prima facie case, to the specific proofs and rebuttals of discriminatory motivation the parties have introduced." *Hicks*, 509 U.S. at 516, 113 S.Ct. at 2752.

At this third level of analysis, the plaintiff must be afforded the opportunity to discredit the defendant's proffered explanations for the contested employment decision, and to show that it is but a pretext for discrimination. "In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment action." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citations omitted), *cert. denied sub nom. Combs v. Meadowcraft Co.*, ___ U.S. ___, 118

13

S.Ct. 685, 139 L.Ed.2d 632 (1998); *see also Hicks*, 509 U.S. at 507-08, 113 S.Ct. at 2747-48 ("The plaintiff then has the full and fair opportunity to demonstrate, ... that the proffered reason was not the true reason for the employment decision, ... and that race [or age] was. He retains that ultimate burden of persuading the [trier of fact] that [he] has been the victim of intentional discrimination.") (citations to *Burdine* and internal quotation marks omitted).

If the plaintiff succeeds in casting doubt upon the credibility of the explanations put forward by the defendant — in other words, "if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action" — then "it follows from *Hicks* that a plaintiff is entitled to survive summary judgment, and judgment as a matter of law...." *Combs*, 106 F.3d at 1529; *see also id.* at 1532 ("To summarize, ... this circuit's post-*Hicks* decisions uniformly hold that once a plaintiff has established a prima facie case and has put on sufficient evidence to allow a factfinder to disbelieve an employer's proffered explanation for its actions, that alone is enough to preclude [summary judgment or] entry of judgment as a matter of law.").

14

**B.  Termination In Violation of ADEA**

    **1.  Prima Facie Case**

In order to make out a *prima facie* case for an ADEA violation based upon termination of the plaintiff's employment, the plaintiff must show:  (1) that he was a member of the protected group of persons between the ages of forty and seventy; (2) that he was terminated from his employment; (3) that he was replaced with a substantially younger person; and (4) that he was qualified to perform the duties of the job from which he was fired. *See Jameson v. Arrow Co.*, 75 F.3d 1528, 1531-32 (11th Cir. 1996); *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207-08 (11th Cir. 1997); *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989), *cert. dismissed*, 493 U.S. 1064, 110 S.Ct. 884, 107 L.Ed.2d 1012 (1990); *see also O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) (stating that an ADEA plaintiff must show that he was replaced by someone "substantially younger," not necessarily by someone less than the age of 40).

It is undisputed that May satisfies three of the four requirements for a prima facie case; BellSouth challenges only the third element:  that May was replaced by a substantially younger

15

person.   The court agrees with BellSouth.   Each of the two
individuals who could be considered May's replacement is older than
he.

Steve Mann has performed May's job duties since May was
discharged.   Mann is nearly three years older than May.   May
testified during deposition that he had been told a "George McGee"
also had assumed some of his former responsibilities (see May's
deposition, at 68), but May concedes he does not know for a fact
who assumed his duties.  (See id.)  BellSouth suggests May must
have been referring to J. H. "Joe" Magee, who is another Facility
Manager in Alabama.  Magee is more than five years older than May,
however.  (See defendant's brief, at 11; Morgan affidavit.)

In his deposition, May also gave the following response to a
question regarding his reasons for thinking he was terminated
because of his age:  "I was the oldest, most senior person in the
job title [of Facility Manager]."  BellSouth presents evidence that
May was the third youngest of the thirteen Facility Managers in
Alabama at the end of December, 1995.  In addition, four of these
managers had more seniority than May.  (See defendant's brief, at
11; Morgan affidavit.)

16

May thus fails to establish the third element of a prima facie

case.  Moreover, even disregarding the technical elements of a

prima facie case, this evidence forbids an inference of age

discrimination in the decision to terminate May's employment.[5]

Accordingly, summary judgment is proper for this claim.

## C.  Termination In Violation of ERISA

The ultimate inquiry in an action claiming termination in

violation of  § 510 of ERISA[6] is whether the employer had the

specific intent to interfere with the employee's ERISA rights.  *See*

*Clark v. Coates & Clark, Inc.*, 990 F.2d 1217, 1222 (11th Cir.

---

[5] Thus, even if the court were to analyze this claim under the slightly
different framework for a prima facie case in the context of a reduction in
force, May still would fail to meet his burden.  May could not establish the
third element under that framework: "presenting evidence by which a fact finder
could reasonably conclude that the employer intended to discriminate on the basis
of age in reaching the challenged decision."  *See Jameson*, 75 F.3d at 1532;
*Benson*, 113 F.3d at 1208.

[6] That section was codified at 29 U.S.C. § 1140.  It provides, in
pertinent part:

### § 1140.  Interference with protected rights

It shall be unlawful for any person to discharge, fine, suspend,
expel, discipline, or discriminate against a participant or
beneficiary for exercising any right to which he is entitled under
the provisions of an employee benefit plan, this subchapter, section
1201 of this title, or the Welfare and Pension Plans Disclosure Act
[§29 U.S.C.A.  301 et seq.], or for the purpose of interfering with
the attainment of any right to which such participant may become
entitled under the plan, this subchapter, or the Welfare and Pension
Plans Disclosure Act.  ...

29 U.S.C. § 1140.

17

1993).  A plaintiff is required to prove that interference with ERISA rights was a motivating factor in the discharge, not that it was the only factor.  Nevertheless, plaintiff must show more than an incidental loss of benefits as a result of the discharge.  *See id.* at 1223.  Presenting no direct evidence of discrimination, Larry Paul May must satisfy the scheme for circumstantial evidence established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817.[7]  *See id.*

Plaintiff may establish a prima facie case of discrimination by showing: (1) he is entitled to protection under ERISA; (2) he was qualified for the position; and (3) he was discharged under circumstances that give rise to an inference of discrimination. Measures designed to reduce costs in general that also result in an incidental reduction in benefit expenses do not suggest discriminatory intent.  Instead, the employee must introduce evidence suggesting that the employer's decision was directed at ERISA rights in particular.  *See Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554, 558-59 (11th Cir. 1997) (quoting *Clark*, 990 F.2d at 1223-24).

---

[7] *See supra* Part III.A.

18

May satisfies the first element by alleging interference with the attainment of rights to which he would become entitled under BellSouth's employee benefit plan.  May's qualification for the position of Facility Manager is undisputed.  Furthermore, the good performance evaluations May received and his proximity to having his pension fully vested satisfy the third element.  May establishes a prima facie case.

BellSouth offers the misconduct documented in the investigative report as the legitimate, nondiscriminatory reason for terminating May's employment.  May's analysis of the investigative report and the documented misconduct, however, casts doubt not only upon the impetus for the investigation, but upon the gravity of such misconduct as well.  (*See, e.g.*, plaintiff's brief, at 11-13, 20-22).  Furthermore, evaluations of May's performance shortly before his discharge praise his work and professionalism.  May's evidence of BellSouth's efforts to reduce its workforce and costs also suggests defendant's stated reasons for the discharge may not have been its actual motivation.[8]  BellSouth may assert that it would have made the same decision despite any

---

[8] The court finds this evidence relevant, but notes that merely proving the RIF (and not the articulated reason) was the actual motivation does not prove an intent to discriminate.  *See, e.g., Gitlitz*, 129 F.3d at 558-59.

19

discriminatory animus. Nevertheless, the court finds that genuine issues of material fact exist for this claim. Accordingly, BellSouth's motion is due to be denied.

**D.   Invasion of Privacy**

The Supreme Court of Alabama defines the tort of invasion of privacy as "the intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Carter v. Innisfree Hotel, Inc.*, 661 So. 2d 1174, 1178 (Ala. 1995); *Nipper v. Variety Wholesalers, Inc.*, 638 So. 2d 778 (Ala. 1994). The court recognizes two types of intrusion as actionable:   (1) intrusion upon a physical space, such as a trespass; and (2) invasion of one's "emotional sanctum."   In defining the tort of invasion of privacy, the court quotes comment b to Restatement (Second) of Torts § 652B (1977):

> The invasion may be physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home. It may also be use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs window with binoculars or tapping his telephone wires.   It may be by some other form of investigation or examination into his private concerns.
> . . .

20

*Carter*, 661 So. 2d at 1178 (quoting *Phillips v. Smalley Maintenance
Services, Inc.*, 435 So.2d 705, 710-11 (Ala. 1983)).

BellSouth had a right "to reasonably investigate" allegations
of misconduct made against May in an anonymous phone call. *Nipper*,
638 So. 2d at 781.  After reviewing the evidence, however, the
court finds that a genuine issue of fact exists as to whether there
was such a phone call or some other legitimate reason to
investigate May.  A related, yet distinct issue of fact exists as
to whether BellSouth's investigation was reasonable or, instead,
intruded into May's private affairs in a manner sufficiently
invasive "to outrage or cause mental suffering, shame, or
humiliation to a person of ordinary sensibilities." *Carter*, 661
So. 2d at 1178; *see also Alabama Electric Co-Operative, Inc. v.
Partridge*, 225 So.2d 848, 850 (Ala. 1969) (stating that a
"violation of the right of privacy may be actionable where the
investigation of a person being watched, trailed, shadowed, or kept
under surveillance is pursued in an offensive or improper manner").

Accordingly, summary judgment is inappropriate on May's
invasion of privacy claim.

21

## IV. CONCLUSION

Defendant's motion thus is due to be granted in part and denied in part. A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this 17th day of February, 1999.

_____
United States District Judge

)
)
)

22